IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL TED LAMB, | § | |
|     TDCJ-CID #790214, | § | |
| v. | § | C.A. NO. C-11-027 |
| | § | |
| RICHARD L. CRITES, ET AL. | § | |

**OPINION AND ORDER DISMISSING CERTAIN CLAIMS AND RETAINING ACTION**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division, and is currently confined at the McConnell Unit in Beeville, Texas. He filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that certain McConnell Unit officers and officials retaliated against him for exercising his first amendment right of access to the courts. (D.E. 1).

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam) (citations omitted). Plaintiff's pro se complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, the Court retains plaintiff's retaliation claims against Captain Jacquelyn Jameson and Officer Lisa Hasette. Plaintiff's claims against Warden Richard Crites and Major Adam Gonzales are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the plaintiff, (D.E. 8), this case was referred to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 10); see also 28 U.S.C. § 636(c).

## II. BACKGROUND

**A.    Plaintiff's Previous Lawsuit.**

In May 2010, plaintiff, represented by counsel, went to trial in Lamb v. Mendoza, No. C-07-449 (S.D. Tex.), in which he raised Eighth Amendment claims that several defendants were deliberately indifferent to his serious medical needs because they ignored his complaints about "domino slamming," and also failed to provide appropriate medical care for his injured hearing. Warden Crites was a defendant in that lawsuit.

After several days of testimony, the jury found that plaintiff did suffer a serious medical need, and that certain medical personnel defendants were deliberately indifferent to his needs. However, the jury concluded that the medical defendants were not the cause of plaintiff's injury, and on June 4, 2010, the Court entered judgment that plaintiff take nothing on his claims.

2

**B.     Plaintiff's Current Allegations.**

On February 2, 2011, plaintiff filed this action alleging that defendants had twice retaliated against him because he filed Lamb v. Mendoza.  He complains of two events that he characterizes as retaliatory.  The first occurred starting on June 6, 2010, and the second occurred on August 18, 2010.

A Spears[1] hearing was held on February 11, 2011.  The following allegations were made in plaintiff's original complaint, (D.E. 1), or at the hearing:

**1.     The June 2010 incident**.

Following the completion of the jury trial, plaintiff was escorted back to the McConnell Unit.  On June 6, 2010, at approximately 10:30 p.m., Officer Gomez ordered plaintiff to pack his property because he was on the regular chain to be transferred to another unit.  Plaintiff asked numerous officers to what unit he was being transferred, but no one knew.  In fact, Officer Zambrano, the chain officer, told plaintiff that he was *not* on the chain list, but that Captain Jameson and Lieutenant Miles had stated that plaintiff was to be shipped out.

On June 7, 2010 at 12:30 a.m., Officer Zambrano asked plaintiff if he was ready to inventory his property.  Plaintiff asked for additional time, and Captain Zambrano told him that she would return later, but she never did.

At 2:10 a.m., Officer Barfoot came to plaintiff's cell to inventory his property.  He mentioned that Captain Jameson indicated that plaintiff might be returning to court.  Plaintiff responded that, if he was going back to court, he needed to keep his property with him and that there was no need to inventory it.  Officer Barfoot called Captain Jameson for instructions.  She

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

informed Officer Barfoot that she did not care if plaintiff was going or staying, his property was to be inventoried. Approximately twenty minutes later, Captain Jameson called and ordered that plaintiff be taken to breakfast.

At 3:00 a.m., after leaving the dining hall, plaintiff was near the A-turnout when Captain Jameson approached him and told him to sit on the bench. She then instructed an officer to lock plaintiff in the cage. Next, plaintiff overheard Captain Jameson on the phone ordering someone "to take that son of a bitch's property, and you know what you can do with it!" Captain Jameson hung up and then told an officer: "[a]ssholes like Lamb have to be taught a lesson about messing with us." Captain Jameson ordered plaintiff released from the cage, but as she walked by him she said: "Lamb, we are going to make an example out of you."

As plaintiff went by the 19-Building pickett, he observed Officer Hasette taking an inventory of his property. At 6:00 a.m., Officer Barfoot and Officer Hasette brought plaintiff his property. The property was dragged in on a sheet, and appeared "in shambles," with plaintiff's legal work strewn about and some missing. His speakers were hanging by wires, and potato chips were smashed. Officer Hasette commented: "[y]ou get what you deserve." Later, Officer Barfoot told plaintiff that he was not on the chain to be transferred or to go to court, and admitted that he believed plaintiff was "being hassled."

At 8:00 a.m., Officer Tavares told plaintiff to pack his property because he was being moved to 4-Building, E-pod, because staff was "rearranging the unit." Plaintiff objected to the move pointing out that 4-Building was known for its excessive noise and that officials knew plaintiff had petitioned for a quieter dorm due to his hearing loss. He commented that the timing of the move was suspiciously related to his trial. Officer Tavares contacted Captain Jameson,

who then gave plaintiff a major case for creating a disturbance, and stated that he did not want plaintiff's "kind" in his dorm. Plaintiff started to object arguing that there had been no due process, but Officer Tavares cautioned him to quietly move, or he would get another disciplinary case.

At 10:00 a.m. Sergeant Gomez escorted plaintiff to 11-Building for prehearing detention. His property was taken to the 19-Building pickett.

At 11:15 a.m., Warden Crites came to plaintiff's cell and told him that he was not being moved to 4-Building, that the disciplinary case was dismissed, and that he could return to his old dorm. Plaintiff told Warden Crites that he believed he had been retaliated against.

**2.     The August 2010 incident.**

On August 18, 2010, after the McConnell Unit had been on lock-down, plaintiff went to the commissary to purchase items. The commissary supervisor, Barbara Thomas, told plaintiff that his inmate trust fund account was frozen, and she advised him that the Attorney General had filed a bill of costs. Plaintiff called his sister and asked her to look into the matter. He learned that the bill of costs had no affect on his trust fund account.

On September 7, 2010, Ms. Thomas called Huntsville about the hold on plaintiff's account. She was advised that Huntsville had not frozen his account, and that the action must have been done at the unit level. A couple of days later, plaintiff was able to purchase items at the commissary.

Plaintiff is seeking a declaratory judgment that he was retaliated against, as well as nominal and punitive damages.

### III. LEGAL STANDARD

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). It is well established that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

### IV. DISCUSSION

Plaintiff claims that the search of his property, the proposed transfer to E-Building, and the hold on his trust fund account were vindictive actions instrumented by defendants and designed to punish him for exercising his right of access to the courts in Lamb v. Mendoza.

A prisoner's First Amendment right of access to the courts includes the right to seek redress through an established prison system. See Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989). Prison officials may not retaliate against a prisoner for exercising this right. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct. Id. at 1165 ("an action motivated by retaliation for the exercise of a constitutionally protected right is

actionable, even if the act, when taken for a different reason, might have been legitimate") (citations omitted).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge." Woods, 60 F.3d at 1166. The Fifth Circuit has further explained that an "inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may be plausibly inferred.'" Id. (citation omitted).

The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights." Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). However, some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." Id. "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Plaintiff has asserted sufficient facts to state a retaliation claim against Captain Jameson and Officer Hasette. Both Captain Jameson and Officer Hasette intimated that plaintiff was "getting what he deserved," when his property was searched and he was put through a ruse

concerning a unit or building transfer.  The fact that plaintiff had just returned from his trial, together with these statements, and the fact there is no evidence to suggest that the transfer was valid, support plaintiff's allegation that he was being retaliated against.  See Woods, 60 F.3d at 1166 (citation omitted).  Thus, the Court retains plaintiff's retaliation claims against Captain Jameson and Officer Hasette, and service will be ordered on these individuals.

Plaintiff fails to assert any facts to support a claim that Warden Crites or Major Gonzales engaged in any retaliatory actions.  To the contrary, Warden Crites intervened and assured that the disciplinary case against plaintiff was dismissed and he was returned to his appropriate dorm.  The fact that Major Gonzales was advised of plaintiff's objection to the proposed building transfer does not suggest that he took any retaliatory action in response, let alone in the first instance.  Thus, plaintiff fails to state a claim against Warden Crites and Major Gonzales, and those claims shall be dismissed.

Plaintiff also claims that his trust fund account was frozen.  Huntsville officials determined that the account freeze happened at the McConnell Unit end.  However, there is simply no evidence that any of the named defendants purposely interfered with plaintiff's account, let alone that they had the authority to access such information.  Moreover, once plaintiff advised Ms. Thomas of the problem, she worked to resolve it without undue delay.  The events concerning plaintiff's trust fund account do not amount to retaliatory conduct.  See Morris, 449 F.3d at 684-85 (addressing de minimis actions).

## V. **CONCLUSION**

For the reasons stated herein, the Court retain's plaintiff's claims of retaliation against Captain Jameson and Officer Hasette, and service shall be ordered on these individuals. Plaintiff's remaining claims against the remaining defendants are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

ORDERED this 29th day of March 2011.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE