IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL TED LAMB | § § | |
| v. | § § § | C.A. NO. C-11-027 |
| RICHARD CRITES, ET AL. | § | |

## OPINION GRANTING PLAINTIFF'S MOTIONS TO RECONSIDER THE DISMISSAL OF DEFENDANTS AND TO AMEND THE COMPLAINT

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is Plaintiff's pro se motion to reconsider the dismissal of his claims against Defendants Warden Richard Crites and Major Adam Gonzales, (D.E. 15, 16),[1] and his motion to amend the complaint. (D.E. 17). For the reasons discussed below, both motions are granted.

## I. BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville Texas. He filed this action on February 2, 2011, alleging that he was retaliated against by Defendants Crites, Gonzales, Hasette and Jameson for exercising his First Amendment right to access the courts. (D.E. 1). A Spears[2] hearing was held on February 11, 2011. On March 29, 2011, his claims against Defendants Crites and Gonzales were dismissed for failure to state a claim and his claims against Defendants Hasette and Jameson were retained. (D.E. 11); Lamb v. Crites, No. C-11-027, 2011 WL 1230143 (S.D. Tex. Mar. 29, 2011) (unpublished). Plaintiff

---

[1] Docket entries 15 and 16 are identical, and citations to the motion for reconsideration will henceforth reference only the former.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), abrogated on other grounds by Neitzke v. Williams, 490 U.S. 319, 324 (1989); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (testimony given at a Spears hearing is incorporated into the pleadings).

filed a motion to reconsider the dismissal of his claims against Defendants Crites and Gonzales on April 18, 2011. (D.E. 15).

## II. DISCUSSION

### A. Plaintiff's Motion For Reconsideration Is Granted.

#### 1. Plaintiff's motion for reconsideration must be construed as a Rule 59(e) motion.

The Federal Rules of Civil Procedure do not expressly provide for motions to reconsider. However, they do contain two rules designed to allow a party to challenge a district court's decision: Rule 59(e) and Rule 60(b). See Del Prado v. B.N. Dev. Co., 602 F.3d 660, 668-69 (5th Cir. 2010) (citations omitted). Because there is "considerable overlap" between the two Rules as a functional matter, their respective application depends on whether the movant satisfies the stricter twenty-eight day time limit prescribed by Rule 59(e) or the laxer "no more than one year after the entry of the judgment" or "within a reasonable time" deadline set forth by Rule 60(b) and (c). Williams v. Thaler, 602 F.3d 291, 303 (5th. Cir.) (citations omitted) (analyzing older version of Rule 59(e) with ten-day deadline and characterizing its scope as unrestricted), cert. denied, __ U.S. __, 131 S. Ct. 506 (2010). Defendants Crites and Gonzales were dismissed on March 29, 2011. (D.E. 11). Plaintiff's motion to reconsider was filed on April 18, 2011. (D.E. 15, at 7). Accordingly, the motion must be evaluated pursuant to Rule 59(e).

#### 2. Legal standard for Rule 59(e) motions.

Rule 59(e) motions "serve the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'" Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989) (citations omitted); accord Kossie v. Crain, 602 F. Supp. 2d 786, 793 (S.D. Tex. 2009) (citation omitted). Rule 59(e) cannot be used to introduce evidence that

2

was available prior to the entry of judgment, nor should it be employed to relitigate old issues, advance new theories, or secure a rehearing on the merits. Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004) (citation omitted); accord Kossie, 602 F. Supp. 2d at 793 (citation omitted).

### 3. Plaintiff's Rule 59(e) motion is granted with respect to his claims against Defendant Crites.

Plaintiff's claims against Defendant Crites were dismissed because he "fail[ed] to assert any facts to support a claim that [he] engaged in retaliatory actions." (D.E. 11, at 8); Lamb, 2011 WL 1230143, at *4. It was also noted that Plaintiff had presented "simply no evidence that any of the named defendants purposely interfered with [his commissary] account," that the actions he alleged regarding the account were de minimis, and that any claims concerning them were therefore dismissed. (D.E. 11, at 8); Lamb, 2011 WL 1230143, at *5.

Plaintiff contends that dismissal of Warden Crites on the grounds that the alleged commissary account interference was de minimis constituted an error as a matter of law. (D.E. 15, at 3). In his initial complaint, he alleged that he was deprived of his commissary privileges for at least three weeks.[3] (D.E. 1, at 7). In Andrade v. Hauck, 452 F.2d 1071, 1071-72 (5th Cir. 1971), the Fifth Circuit held that a prisoner who alleged that his jailers restricted commissary privileges in retaliation for exercising his First Amendment rights sufficiently stated a claim

---

[3] In the initial complaint, Plaintiff indicated that he went to the commissary on August 18, 2010, and was informed that his card had been disabled. (D.E. 1, at 7). He then returned to the commissary "a couple of days" after September 7, 2010 and used it without incident. Id. In the motion for reconsideration, Plaintiff contends that he was "unable to access his account for a regular spend for well over 2 months." (D.E. 15, at 3). This calculation apparently takes into account a period of lockdown which preceded September 7, 2010 for more than thirty days. (D.E. 1, at 7). However, it is not clear if or why Plaintiff believes that his card was disabled prior to September 7, 2010, and his testimony at the hearing did not address the question. Consequently, for purposes of this order, it will be assumed that the card was disabled for between three weeks and two months. The lack of specificity on this point does not, for reasons explained below, alter the outcome of this order.

3

pursuant to § 1983. The Andrade court did not specify the length of the restriction, nor did it instruct the lower courts to apply a minimum duration to such cases, or to demand a showing of actual harm suffered by the loss of privileges. On the contrary, the Fifth Circuit's most recent citation to Andrade suggests that it would be inappropriate to do so. See Hanna v. Maxwell, No. 10-30053, 2011 WL 756202, at *1 (5th Cir. Mar. 3, 2011) (unpublished) (per curiam) (citing Andrade for the proposition that "alleging denial of commissary privileges in retaliation for writing to a judge is sufficient to avoid dismissal of a § 1983 complaint"). In light of Andrade and its progeny, the commissary restrictions alleged by Plaintiff are not de minimis for purposes of preliminary screening pursuant to 28 U.S.C. § 1915A.

Plaintiff's theory that Defendant Crites ordered the disabling of his commissary card is grounded in part on his belief that the action was "done with specific knowledge only he possessed" and because it "required his ranking authority to be carried out." (D.E. 15, at 5). Although these claims are not fully fleshed out in the motion for reconsideration, his narrative is clarified by the original complaint and by his testimony at the hearing. In the complaint, Plaintiff asserted that the commissary supervisor informed him on August 18, 2010 that his commissary card had been disabled because he "may owe money to [TDCJ] in the future." (D.E. 1, at 7). At the hearing, he testified that the commissary supervisor mentioned legal activity as the source of the account hold. Plaintiff believes these comments were references to the bill of costs filed by the defendants in his previous lawsuit against TDCJ officials. Id.

A review of the docket in that lawsuit suggests that his account is facially plausible. Defendants filed a bill of costs in the other action on June 18, 2010. Lamb v. Mendoza, et al., C-

4

07-449 (S.D. Tex.), at (D.E. 116). On November 15, 2010, a memorandum and recommendation was issued to vacate the bill of costs, id. at (D.E. 128), and on December 21, 2010, that recommendation was adopted. Id. at (D.E. 132). Accepting Plaintiff's allegation that he was told his account was frozen on August 18, 2010, i.e., after the defendants filed the bill of costs, but before the recommendation was issued, and that he was informed the freeze was imposed for potential future debts, it would be reasonable to suspect the two events were related. Furthermore, though the connection would not necessarily prove that the commissary card was disabled out of retaliation, it certainly makes the claim more credible, directly linking, as it does, the other lawsuit with the purportedly retaliatory act. Plaintiff's view that retaliatory intent was more likely because it was unreasonable–and a violation of TDCJ's own policies–for prison officials to suspend his commissary privileges for a debt he had not yet incurred, is not a position that can be dismissed out of hand, particularly in light of the fact that the debt was apparently never imposed. This reconstruction also makes relevant Plaintiff's allegations that Defendant Crites oversees the commissary, that he approves of all decisions to disable cards, and that he was the only defendant from the previous lawsuit still assigned to the McConnell Unit. (D.E. 15, at 2). For if the commissary restriction was in fact the result of the bill of costs, it naturally follows that the decision to impose the sanction was likely done by someone with knowledge of the lawsuit and authority over the commissary. Plaintiff claims that Defendant Crites uniquely fits both criteria. As a result, he alleges facts sufficient to establish his involvement in the purportedly retaliatory act. See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) ("The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'") (citations omitted).

5

The restriction of commissary privileges was not de minimis and Plaintiff adequately connects Defendant Crites to that act for purposes of § 1915A screening. To be sure, Plaintiff did not describe with ideal clarity in his initial complaint, or at the hearing his reasons for supposing Defendant Crites responsible for the decision, even though he was presumably in possession of those reasons at that time. Nevertheless, because he did consistently assert the substance of his account earlier, because he is entitled to the liberal pleading standards due a pro se plaintiff, because of the low bar set for advancing beyond preliminary screening, and because of the error in applying Andrade, he is entitled to reconsideration. His claim against Defendant Crites for retaliation in the disabling of his commissary card is therefore reinstated.

Finally, the finding that Plaintiff failed to sufficiently link Defendant Crites to the attempted housing re-assignment or threatened disciplinary cases was in error. It was reasoned that he could not have been involved in the attempted cell re-assignment or threatened disciplinary cases simply because he ultimately intervened to resolve both issues. (D.E. 11, at 8); Lamb, 2011 WL 1230143, at *4. However, the fact that Defendant Crites eventually assisted Plaintiff does not show that he had nothing to do with the earlier retaliatory conduct. Indeed, accepting Plaintiff's version as true for purposes of § 1915A screening, it could just as easily show that Defendant Crites likely was involved in that conduct, as he was clearly aware of Plaintiff's situation and was in a position of authority such that he presumably could have ordered it or prevented it. Plaintiff testified that he believed Defendant Crites only intervened when the retaliatory plan went awry. He has also consistently maintained that the threatened disciplinary cases and housing re-assignment constituted harassment even though neither were carried out, particularly because those threats allowed TDCJ officials to damage his property.

6

Consequently, the retaliation claims against Defendants Jameson and Hasette were retained in part because of that theory. It was therefore inconsistent to then find that Defendant Crites could not have been involved because he resolved the threats, as the retaliatory acts had already been committed.

In addition, it warrants reiterating that Defendant Crites was involved in the litigation that allegedly gave rise to the retaliation, and that Plaintiff was, as he has repeatedly pointed out, being threatened with a move back to the very dorm that led to his earlier lawsuit. Lastly, because Plaintiff complains of a pattern of retaliation, and because the commissary restriction claims have been reinstated, it is more likely that Defendant Crites, given his authority and alleged role in the retaliatory scheme, is implicated in all of the conduct alleged. In sum, the allegations sufficiently connect Defendant Crites to the attempted re-assignment and threatened disciplinary cases. As a result, that claim is reinstated. Accordingly, Plaintiff's motion for reconsideration is granted with respect to all claims against Defendant Crites.

4. **Plaintiff's Rule 59(e) motion is granted with respect to his claims against Defendant Gonzales.**

As with Plaintiff's claims against Defendant Crites, his claims against Defendant Gonzales were dismissed because he "fail[ed] to assert any facts to support a claim that [he] engaged in retaliatory actions." (D.E. 11, at 8); Lamb, 2011 WL 1230143, at *4. It was concluded that "[t]he fact that Major Gonzales was advised of plaintiff's objections to the proposed building transfer does not suggest that he took any retaliatory actions in response, let alone in the first instance." Id.

In the original complaint, Plaintiff provided this recitation:

> [Officer Tavares] left and called Major Gonzales. She came back

7

> and said Captain Jameson wrote a major case against me for
> creating a disturbance, and the major said he doesn't want your
> kind in his dorm ... [Officer Tavares] ... told me the major said if I
> didn't hurry up and move I was getting two major cases.

(D.E. 1, at 6). In dismissing the claim against Major Gonzales, Plaintiff's account of these events was characterized in the following manner:

> Officer Tavares contacted Captain Jameson, who then gave
> plaintiff a major case for creating a disturbance, and stated that he
> did not want plaintiff's "kind" in his dorm. Plaintiff started to
> object arguing that there had been no due process, but Officer
> Tavares cautioned him to quietly move, or he would get another
> disciplinary case.

(D.E. 11, at 4-5); Lamb, 2011 WL 1230143, at *2.

Although the precise role played by each individual is rendered confusing by the omission of Defendant Gonzales' surname, and by the failure to capitalize his rank, a close reading of the complaint confirms that Plaintiff was alleging that it was Major Gonzales, not Captain Jameson, who remarked that he did not want Plaintiff's "kind" in the dorm, and that it was Major Gonzales, not Officer Tavares, who first articulated the threat of charging him with two major disciplinary cases. At the hearing, Plaintiff compounded the confusion with an ambiguous use of pronouns, but when his testimony is reviewed in conjunction with his initial complaint it is evident that he has consistently presented the same account.

In light of these allegations, it was error to hold that Plaintiff "fail[ed] to assert any facts to support a claim that ... Major Gonzales engaged in retaliatory actions." (D.E. 11, at 8); Lamb, 2011 WL 1230143, at *4. On the contrary, he explicitly accused him, in his initial complaint, of full and active participation in the alleged campaign to unfairly re-assign him to a different living space. Because the allegations surrounding that re-assignment have already been found to state

8

an act of retaliation, Plaintiff's claim against Major Gonzales must be reinstated and service shall be ordered upon that defendant.[4]

**B.     Plaintiff's Motion To Amend Is Granted.**

The Federal Rules of Civil Procedure provide that "[a] party may amend its pleading once as a matter of course if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1). Plaintiff has not yet amended his complaint. He seeks to amend now in order to clarify and supplement his allegations, particularly with respect to Defendants Crites and Gonzales. (D.E. 17, 18). Because those Defendants are reinstated in the action by this order, his motion to amend is granted.

---

[4] This revised understanding of Plaintiff's allegations indicates that an act was wrongly attributed to Defendant Jameson in the prior order. Nevertheless, that act was not cited as a reason for retaining the claim against that defendant, and in any event there are clearly sufficient grounds to order service upon her for her other alleged acts.

9

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion to reconsider, (D.E. 15, 16), and his motion to amend, (D.E. 17), are both GRANTED. The prior order, (D.E. 11); Lamb, 2011 WL 1230143, is VACATED insofar as it dismissed the claims against Defendants Richard Crites and Adam Gonzales, insofar as it found the restriction of commissary privileges de minimis, and insofar as its summary of the facts conflicts with anything contained in this order. In all other respects, the order remains valid. An order for service of process shall issue for Defendants Crites and Gonzales, and shall include Plaintiff's amended complaint. (D.E. 18).

ORDERED this 29th day of April 2011.

BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE