IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL TED LAMB | § | |
| | § | |
| v. | § | C.A. NO. C-11-027 |
| | § | |
| RICHARD CRITES, ET AL. | § | |

**OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is Plaintiff's motion for a preliminary injunction. (D.E. 31, 35). For the reasons discussed below, the motion is denied.

**I.  JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. After consent by the parties, (D.E. 8, 28), the case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 30); see also 28 U.S.C. § 636(c).

**II.  BACKGROUND**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville, Texas. He filed this action on February 2, 2011, alleging that he was retaliated against by Defendants Crites, Gonzales, Hassette and Jameson for exercising his First Amendment right to access the courts. (D.E. 1). A Spears[1] hearing was held on February 11, 2011. On March 29, 2011, his claims against Defendants Crites and Gonzales were dismissed for failure to state a

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), abrogated on other grounds by Neitzke v. Williams, 490 U.S. 319, 324 (1989); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (testimony given at Spears hearing is incorporated into the pleadings).

claim and his claims against Defendants Hassette and Jameson were retained. Lamb v. Crites, No. C-11-027, 2011 WL 1230143 (S.D. Tex. Mar. 29, 2011) (unpublished). On April 18, 2011 Plaintiff filed a motion to reconsider the dismissal of his claims against Defendants Crites and Gonzales, (D.E. 16), and a motion to amend his complaint, (D.E. 17, 18). On April 29, 2011, those motions were granted, and the claims against Defendants Crites and Gonzales were reinstated. Lamb v. Crites, No. C-11-027, 2011 WL 1668063 (S.D. Tex. Apr. 29, 2011) (unpublished).

On July 5, 2011, Plaintiff filed a motion for a preliminary injunction, (D.E. 31), and on July 18, 2011 he filed a supplement. (D.E. 35). Defendants filed a response on July 26, 2011. (D.E. 36).

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he is being victimized by an ongoing pattern of retaliatory acts by McConnell Unit staff in the form of abusive and unjustified searches of his living space, as well as harassment related to valid requests for a secure box in which to store his legal materials. (D.E. 31). He seeks an injunction ordering Defendants to provide him with a legal box and to refrain from further retaliatory acts, including shakedowns. Id.

**A.  Plaintiff Alleges That The Shakedowns Are Retaliatory.**

Plaintiff asserts that his cubicle is being "shookdown" by prison employees at a substantially higher rate than those of other inmates in the same section of the facility. Id. at 1. Although he maintains that he has suffered a higher rate of shakedowns since filing an earlier lawsuit, he believes that the harassment has markedly increased as a result of the current one. Id. Specifically, he claims that his living space was recently shaken down for the sixth time in ten

2

days.  Id.

Plaintiff highlights an incident that took place on June 7, 2011 to illustrate his claim.  On that day, he alleges that three officers ran into his dorm, went straight for his cubicle, and proceeded to "ransack and abuse [his] property."  Id.  As the officers were departing with Plaintiff's personal property in hand, he asked them who had authorized the shakedown and they responded that it was "the major."  Id. at 2.  When he suggested that Major Gonzales had only ordered the search so as to retaliate against him for the lawsuit, "their demeanor changed and they were much more civil."  Id.  Eventually, they returned his possessions, became apologetic, and made clear that they had no desire to become involved in the situation.  Id.  The next morning, Plaintiff confirmed with the night shift captain that Major Gonzales had selected his living space for the shakedown.  Id.

Juarez Bibbs, an inmate at the McConnell Unit, swears in an affidavit that he has witnessed officers search Plaintiff's cubicle at least three or four times a week, and opines that such a rate demonstrates that the searches are not random.  Id. at 6.  He represents that officers frequently and unnecessarily "scattered" Plaintiff's legal materials, something that they did not do while searching other cells.  Id.  Shawn Henderson, another inmate at the McConnell Unit, swears in an affidavit that Plaintiff has suffered harassment from TDCJ over the last two years, including a higher rate of shakedowns that "leave his cubicle in serious disarray."  Id. at 9.  Mr. Henderson describes the June 7, 2011 incident in particular, confirming Plaintiff's account.  Id.

**B.     Plaintiff Alleges That The Denial Of The Legal Box Is Retaliatory.**

Plaintiff relates that he filed a request for a legal box to store his paperwork on March 15, 2011.  Id. at 2.  Candace Moore, the law librarian, responded that it would take "three or four

3

months at least" before she could inspect his legal materials and approve the box. Id. When confronted with TDCJ policy instructing employees to be more prompt in authorizing legal boxes, Ms. Moore responded, "I do what I want, when I want," and then threatened to trump up charges in order to deny the request. Id. After several weeks passed with no action, Plaintiff withdrew the request for a box. Id. On March 27, 2011, Plaintiff filed a Step 1 grievance, complaining about Ms. Moore's behavior with respect to the legal box request. (D.E. 35, at 3-4). He asked that the "situation be resolved with Ms. Moore," allowing him to resubmit the request for a legal box without fear of harassment. Id. at 4. On March 31, 2011, Warden Norris Jackson responded, "Your complaint has been noted. The Law Library is in possession of an I-60 from you asking to withdraw your request for a legal box. If this was received in error you will need to contact the Law Library." Id. On April 14, 2011, Plaintiff filed a Step 2 grievance, expressing frustration that the earlier response did not address his complaint, as he was seeking assurance that he would not be subjected to harassment if he renewed his request for a legal box. Id. at 4-5. In a response dated June 10, 2011,[2] Vickie Barrow, an assistant manager specializing in access to the courts, replied that his complaint had been properly addressed at Step 1 and reiterated that he should resubmit a request for a legal box if he still desired one. Id. at 5.

Mr. Bibbs affirms that Ms. Moore routinely "abuses her authority," relating to various inappropriate actions she has taken towards him. (D.E. 31, at 6-7). A second prisoner at the McConnell Unit, Jerome Johnson, recounts other harassing behavior undertaken by Ms. Moore in her dealings with offenders. Id. at 8. Plaintiff also submits an affidavit by his sister, Barbara

---

[2] Plaintiff believes that the response was either "backdated to make it appear the grievances were returned timely" or that "it took several weeks for the grievances to find their way from the administration building to" him, given that he only received it in early July 2011. (D.E. 35, at 1).

Thomas, wherein she recounts that she spoke to Ms. Moore regarding the legal box and then filed a complaint with the TDCJ Office of Inspector General because Ms. Moore and her supervisor treated her rudely. Id. at 10-11.

### IV. DISCUSSION

A. **A Preliminary Injunction Is An Extraordinary Remedy.**

A motion for a preliminary injunction is governed by Federal Rule of Civil Procedure 65(a). To obtain relief pursuant to that Rule, a movant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir. 1999) (per curiam) (citation omitted). The movant must prove all four elements; failure to do so results in the motion's denial. Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 472 (5th Cir. 1985) (citation omitted). The Fifth Circuit has explained that injunctive relief is an "extraordinary remedy which requires the movant to unequivocally show the need for its issuance." Valley v. Rapides Parish Sch. Bd., 118 F.3d 1047, 1050 (5th Cir. 1997) (citation omitted).

B. **Plaintiff Is Not Entitled To A Preliminary Injunction With Respect To His Claims Regarding The Legal Box.**

Defendants argue that Plaintiff is not entitled to injunctive relief with respect to his claims concerning the legal box because the only reason he did not receive one was that he withdrew his request. (D.E. 36, at 4). They insist that "[t]here is nothing in his allegations indicating that he was improperly denied the legal box by Ms. Moore." Id. Finally, they observe

that Ms. Moore is not a party to this suit and that it would therefore "be improper to order her to give Mr. Lamb a legal box." Id.

It is unnecessary to address the first two arguments because Defendants are correct that Ms. Moore is not a party to this lawsuit. As a result, there is no jurisdiction to issue any orders directed at her. See Bethell v. Peace, 441 F.2d 495, 498 (5th Cir. 1971) (finding "that the scope of [an] injunction is overbroad [if] ... it attempts to affect rights between [the defendant and other individuals] who were not parties to the action"); see also Anthony v. Quimby, Nos. 87-8250, 88-1877, 1990 WL 59364, at *11 (E.D. Pa. May 2, 1990) (unpublished) ("DOI is not a party to this litigation and, therefore, this court has no jurisdiction to issue any orders, much less a preliminary injunction, against that agency."). Moreover, Plaintiff has not alleged that any of the named Defendants instructed Ms. Moore to respond to his requests as she did, nor that they were involved in her actions in any way. As a result, he is not entitled to a preliminary injunction regarding his requests for legal storage space. See Gibson v. Alameida, No. CV-F-03-5445, 2008 WL 598159, at *1-2 (E.D. Cal. Mar. 4, 2008) (unpublished) (motion for preliminary injunction by prisoner filing a § 1983 claim denied where claims in the motion were unrelated to claims in the lawsuit because "court cannot issue orders that do not remedy the claims alleged in [the] action"), adopted by 2008 WL 767725 (E.D. Cal. Mar. 21, 2008) (unpublished).

C.   **Plaintiff Is Not Entitled To A Preliminary Injunction With Respect To The Shakedowns.**

Defendants urge that "there is no causal link between the alleged shakedowns and this lawsuit." (D.E. 36, at 3). They emphasize that Plaintiff admits that his property was returned when he mentioned the lawsuit, and see in that admission evidence that causation is lacking. Id. Defendants assert "that prisons are volatile environments with heightened security concerns" and

that guards therefore require "unfettered access" to search them at will. Id. at 3-4. They suggest that an injunction would be inappropriate because prisoners have "no" expectation of privacy in their cells. Id. at 4. Finally, they maintain that Plaintiff has put forth "no allegation of any injury resulting from the shakedown," noting that he "was not deprived of anything" by the search. Id. at 3.

Although Defendants flatly claim that "there is no causal link between the alleged shakedowns and this lawsuit," id. at 3, the one piece of evidence they point to in order to support the assertion cuts against their argument. It is true that Plaintiff acknowledges that his property was returned to him after he told the searching officers that he suspected they had been pressed into the service of a retaliatory scheme. (D.E. 31, at 2). Nevertheless, if his description is accurate–and Defendants do not contest it–it would be just as plausible to suppose that the officers credited the accusation and wished to distance themselves from the scheme. Furthermore, Plaintiff relates–in allegations that are also uncontested by Defendants–that he was told by these three officers as well as a fourth that Defendant Gonzales ordered the shakedowns, providing further reason to find a causal link between the raids and the lawsuit.

While it is true that prisoners enjoy reduced privacy expectations in prison, this does not mean that they "forfeit all constitutional rights when they pass through the prison's gates." Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 863 (5th Cir. 2004) (citation omitted). One right they retain is that against retaliation for exercising their First Amendment rights to access the courts and file grievances. See Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). Defendants may use their valid powers to search inmates' living spaces in executing their duties. They may not do so in retaliation for Plaintiff exercising his First

Amendment rights. See id. at 1165 (actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of protected conduct).

Similarly, Defendants' position that one must be "deprived of" some tangible object by a search in order for it to constitute retaliation is incorrect. An action taken by a prison official in retaliation for a prisoner's valid exercise of his First Amendment rights causes a constitutional injury where it "might well 'chill or silence a person of ordinary firmness from future First Amendment activities.'" Bibbs v. Early, 541 F.3d 267, 272 (5th Cir. 2008) (quoting Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006)). Frequent and highly disruptive searches of one's living space, performed at a disproportionate rate and designed to disorder legal materials prepared for the litigation of pending cases, plainly satisfies that standard. See Ehrlich v. Matzke, No. 01 C 7449, 2002 WL 265177, at *6-7 (N.D. Ill. Feb. 25, 2002) (unpublished) (disproportionately long searches of prisoners' cells and those designed for "the deliberate humiliation of reading through ... personal papers" can give rise to a valid constitutional claim) (citing Houchins v. KQED, Inc., 438 U.S. 1, 5 n.2 (1978)).

However, the burden to justify preliminary injunctive relief rests on the movant, see Enterprise Int'l, Inc., 762 F.2d at 472 (citation omitted), and Plaintiff has not met that burden. First, although he provides some evidence that he suffers the harassing searches in the form of the witness affidavits, he insufficiently establishes a substantial likelihood of success on the merits. To ultimately prevail on his retaliation claim, Plaintiff would have to prove, inter alia, retaliatory intent. See Morris, 449 F.3d at 684. Although Plaintiff submits some evidence that Defendant Gonzales ordered the shakedowns, he presents no evidence that he did so out of

retaliatory motivation. Consequently, he has not established a substantial likelihood of success on the merits.

Turning to the second factor, Plaintiff fails to show that there is a substantial threat that he will suffer an irreparable injury if the injunction is denied. The main damage inflicted by the unwarranted shakedowns, according to Plaintiff, is the disruption of his legal papers. Such a consequence cannot be regarded as an irreparable injury, especially in light of the fact that he continues to submit well-written and timely briefs. See Anderson v. Burnette, No. CV 309-018, 2009 WL 1406365, at *3 (S.D. Ga. May 19, 2009) (unpublished) (no actual injury for disruption of prisoner's legal papers where no showing that any court cases were adversely affected). Accordingly, he fails to meet the second prong of the test.

Lastly, Plaintiff supplies no reason to conclude that he passes the final two elements of the preliminary injunction inquiry. Any injunction directed at state prison authorities presumably causes some level of inconvenience for public officials and requires the expenditure of some amount of taxpayer funds, thus resulting in damage to Defendants and the public interest both. See 18 U.S.C. § 3626(a)(2) (when considering a preliminary injunction, a "court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief"). Plaintiff does not show that his threatened injury outweighs the former, or that the injunction will not cause the latter, and he therefore falls short of unequivocally demonstrating the need for the extraordinary remedy of a preliminary injunction.

## V.  CONCLUSION

For the reasons stated above, Plaintiff's motion for a preliminary injunction, (D.E. 31, 35), is DENIED.

ORDERED this 28th day of July 2011.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE